IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMAHL RICE,

Plaintiff

v  *  Civil Action No. RDB-17-3628

BRITTANY DISTANCE,

Defendant

***

## MEMORANDUM OPINION

Plaintiff Jamahl Rice filed this civil rights against Defendant Brittany Distance, claiming that she used excessive force against him and violated his due process rights. ECF No. 1. Defendant has filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, ECF No. 26, and Plaintiff has responded, ECF No. 31. The Motion is now ripe for review. For the reasons that follow, the Court will grant the Motion in part and deny the Motion in part.

## BACKGROUND

### A. Plaintiff's Allegations

In his unsworn Complaint, Plaintiff states that,

On [October 27, 2017] at 10:45 am[,] I[,] Jamahl Rice asked officer Brittany Distance if I could use the inmate telephone. She told me there was none open at the time which was not the truth because I had the phones in my eye sight, so I asked her again a[nd] this time she cursed at me stating "you heard what I fucking said[.]" So I proceeded to walk out of my dorm toward the payphone[.] At this time she hit me in the back of my head with her radio c[au]sing me to lo[]se balance and fall on the floor. I was unable to catch myself d[ue] to me wearing two slings for shoulder injuries. She then called a signal 13 which is assault on an officer, and I was given an infraction . . . [for] assault on an officer. There was a male officer on the hospital floor working with officer Distance, at no time did she ask this officer for assistance. . . . I had on two arm slings because my left shoulder was dislocated and my right shoulder was recovering.

ECF No. 1 at 2-3 (some capitalization altered). Plaintiff reports that his right shoulder was

dislocated as a consequence of the fall. *Id.* at 3. Plaintiff states the infraction notice for assaulting an officer was false, but that he was nonetheless punished for the infraction by having 240 days of good time credit revoked, being deprived of various privileges, and being placed on segregation housing. *Id.* at 3. Plaintiff requests monetary damages for Defendant's use of excessive force and asks that the punishments imposed as a consequence of the infraction be rescinded. *Id.* at 3-4.

**B. Defendant's Response**

In Response to Plaintiff's Complaint, Defendant filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 26. Accompanying the Motion are Defendant's affidavit regarding the incident and various reports about the incident prepared by employees of the Department of Public Safety and Correctional Services, including a report in response to Plaintiff's complaint to the Intelligence and Investigative Division that Defendant assaulted him. ECF Nos. 26-2, 26-3, 26-4.

Although she acknowledges using force against Plaintiff, Defendant argues that Plaintiff's Complaint is without merit because the force was not excessive under the situation. She avers that

> On October 27, 2017, I was assigned to the 3rd floor hospital [at Metropolitan Transition Center]. As I was conducting rounds on the floor, I heard a banging coming from the window of room #310, which housed Mr. Rice. After reaching the room to investigate, I opened the door and Mr. Rice asked to use the telephone. I advised him that both phones were currently in use and that he would have to wait. I ordered Mr. Rice to step away from the door; however, he refused replying "I don't give a Fuck." Using his left hand, Mr. Rice aggressively pushed my right should[er] causing me to stumble backwards. Fearing for my safety, I used my radio to call a signal 13, Officer Needs Assistance, meanwhile Mr. Rice continued to advance toward me. As a means of self-defense, I struck Mr. Rice in the head with my assigned radio. Mr. Rice jumped back as Corporal Carlton Simmons responded to the scene.
>
> . . . I did not physically touch Mr. Rice on October 27, 2017 before he assaulted me and I did not push him. . . . Mr. Rice did not fall on the floor at any time and he was not wearing a sling on both arms. He had one sling on during the incident.

2

ECF No. 26-2 at 2-3.

Simmons escorted Plaintiff from the scene and "to the Dispensary for treatment and evaluation." *Id.*; ECF No. 26-3 at 4. Plaintiff was evaluated by a doctor the same day. ECF No. 26-3 at 8. Plaintiff informed the doctor that a correctional officer pulled his right arm and dislocated it. *Id.* Accordingly, the doctor ordered that Plaintiff undergo an x-ray of his right shoulder; the x-ray revealed that there was "no acute dislocation" of the shoulder, although there was a pre-existing subluxation of the shoulder that was already known to the doctors. *Id.*

Defendant has submitted a copy of the Inmate Hearing Record, at which Plaintiff pled guilty to each of the violations alleged in the infraction notice. ECF No. 26-4 at 20-23. The hearing was held at North Branch Correctional Institution (NBCI) before Hearing Officer Chris Esser. *Id.* Plaintiff's guilty plea was the result of his agreement with a representative of NBCI. *Id.* at 22. There is no indication that Defendant was present at or in any way involved in the hearing itself, other than the fact that she authored the underlying infraction notice.

## C. Plaintiff's Response in Opposition to Motion

In his sworn Response in Opposition[1] to Defendant's dispositive Motion Plaintiff states that he "never put his hands on Brittany Distance," contradicting Defendant's sworn statement. ECF No. 31 at 2. However, Plaintiff's response acknowledges that Defendant "had nothing to do with violating my due process rights at the infraction hearing." ECF No. 31 at 17.

---

[1] Because the contents of the Response indicated that Plaintiff intended the document to be sworn, but failed to satisfactorily do so (the Response was not signed and was not made under penalty of perjury), the Court allowed Plaintiff the opportunity to clarify his intent. ECF Nos. 31, 32. Plaintiff timely filed a signed supplement swearing under penalty of perjury to the veracity of the Response. ECF No. 33. Accordingly, the Court will treat the Response as sworn.

## STANDARD OF REVIEW

Defendant's dispositive Motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). Because Defendant has filed and relied on declarations and exhibits attached to her dispositive motion, the motion shall be treated as one for summary judgment.

Summary judgment is governed by Rule 56(a), which provides in relevant part that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In analyzing a summary judgment motion, the court should "view the evidence in the light most favorable to ... the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the

witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)). Because Plaintiff is proceeding pro se, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, the court must also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted).

## DISCUSSION

To proceed under 42 U.S.C. § 1983, a plaintiff must allege a violation of a federal constitutional right or a right secured by federal law. *Baker v. McCollan*, 443 U.S. 137, 140 (1979). To state a claim under § 1983, a plaintiff must: 1) "allege the violation of a right secured by the Constitution and laws of the United States"; and 2) "show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A. Excessive Force Claim

A convicted inmate's claim of use of excessive physical force is examined in the context of the Eighth Amendment's prohibition against cruel and unusual punishment. *See Whitley v. Albers*, 475 U.S. 312, 391–21 (1986); *Hudson v. McMillan*, 503 U.S. 1, 7–9 (1992). The use of force by a prison officer violates an inmate's Eighth Amendment rights when such force is

"inconsistent with contemporary standards of decency," *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), or is "'repugnant to the consciousness of mankind.'" *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (per curiam) (citation omitted).

Whether force used by prison officials was excessive under the Eighth Amendment is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U. S. at 6-7. This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley*, 475 U.S. at 321. The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins*, 559 U.S. at 38. The extent of injury incurred is one factor indicative of whether the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.*

Here, both parties allege that Plaintiff wanted to use the phone, that Defendant told him that he was not allowed to do so, that Plaintiff nonetheless attempted to proceed to the phone, and that at some point Defendant struck Plaintiff on the head with her radio. However, the parties' versions of events differ significantly as to the details immediately preceding the use of force. Defendant avers that her purpose for striking Plaintiff was self-defense and that she deployed this force only after Plaintiff physically assaulted her and "continued to advance toward [her]" despite her calling for additional assistance. ECF No. 26-2. A single blow in self-defense and while fearing for one's safety would certainly suggest a good-faith application of force rather than force

undertaken maliciously.

However, critical to the instant case is the fact that Plaintiff denies under oath that he assaulted Defendant, swearing that he "never put his hands on Brittany Distance." ECF No. 31 at 2. Under Plaintiff's version of events, Defendant stuck Plaintiff based solely on their interaction regarding Plaintiff's use of the phone and while he posed no threat to her safety. Defendant does not offer any alternate, good-faith justification for her use of force and thus Plaintiff's sworn Response is fatal to Defendant's Motion for Summary Judgment as it creates a dispute of material fact on this claim. The Court cannot say on the record before it that the use of force was justified. Accordingly, Defendant's Motion must be denied as to this claim.

**B. Due Process/Disciplinary Hearing Claim**

Turning to Plaintiff's due process claim arising from the disciplinary proceedings and punishment, Plaintiff concedes that Distance "had nothing to do with violating [his] due process rights at the infraction hearing." ECF No. 31 at 17. The uncontradicted evidence is that Distance merely wrote the infraction charge; she was not involved in the disciplinary hearing regarding the charges, nor did she have a role in selecting the punishment imposed after Plaintiff pled guilty to the infractions. See ECF No. 26-4 at 17, 20-23, 26-27. As Distance is the sole named Defendant, Plaintiff has failed to adequate allege a due process violation and this claim must be dismissed.

## CONCLUSION

Accordingly, the Court construes Defendant's dispositive Motion as one for Summary Judgment and grants the Motion in part as to the due process claim. A separate Order follows.

December 11, 2018
Date

RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE

7