IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMAHL RICE,                          *

     Plaintiff,                     *

v.                                    *          Civil Action No. RDB-17-3628

BRITTANY DISTANCE                     *

     Defendant.                    *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

The Plaintiff Jamahl Rice ("Rice" or "Plaintiff") is a state inmate in the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, which is operated by the Maryland Department of Public Safety and Correctional Services ("DPSCS"). On October 27, 2017, he was an inmate assigned to the Eastern Correctional Institution ("ECI") but was receiving medical care at the Metropolitan Training Center ("MTC") for injuries previously sustained. On that date, he was involved in an altercation with Corrections Officer Brittany Distance ("Distance" or "Defendant"), employed by DPSCS and assigned to the hospital at MTC. Rice initially filed a *pro se* Complaint against Distance on December 7, 2017 alleging deprivation of his rights under the Eighth Amendment to the U.S. Constitution, as well as due process violations. (ECF No. 1.) Specifically, he made a claim of use of excessive force by Distance and also a claim of her violation of his due process rights.

With respect to the initial *pro se* Complaint, Distance filed a Motion to Dismiss, or in the Alternative, a Motion for Summary Judgment (ECF No. 26). This Court granted in part and denied in part that motion (ECF Nos. 34, 35), entering summary judgment in favor of the

Defendant Distance on the due process claim but denying it with respect to the Eighth

Amendment excessive force claim.  That denial was based on the Plaintiff's claim that he

"never put his hands on Brittany Distance" before she struck him on the head with a handheld

radio.  (ECF No. 31 at 2.)  Accordingly, this Court held that there was a dispute of material

fact as to the events of October 27, 2017.  Subsequently, Rice's Motion to Appoint Counsel

(ECF No. 37) was granted, and *pro bono* counsel was appointed to represent him (ECF No.

39).[1]  Ultimately, Rice's appointed counsel filed a one-count Amended Complaint alleging an

Eighth Amendment excessive force claim under 42 U.S.C.§ 1983. (ECF No. 49.)  The Plaintiff

was then given an opportunity to engage in discovery.

Now pending is the Defendant's Motion to Dismiss, or in the Alternative, Motion for

Summary Judgment as to the Amended Complaint.  (ECF No. 64.)[2]  The undisputed material

facts in this case are not as originally suggested by Rice.  These facts clearly indicate that there

was physical contact by Rice, who is six feet tall and weighs over 200 pounds, with the

Defendant Correctional Officer Distance, who is a five-foot, four-inch woman weighing

around 125 pounds.  These undisputed facts also establish that there was no mention in Rice's

medical records for October 27, 2017 of any injuries to his head.  After according Rice the

opportunity to establish his claim with the assistance of court-appointed counsel, this excessive

force claim clearly fails as a matter of law.  Accordingly, for the reasons that follow, the

---

[1] *See* Local Rule 701.1.a (D. Md. 2018).  At the time of his appointment, *pro bono* counsel Christopher J. Olsen was with the Bethesda, Maryland office of Rifkin, Weiner, Livingston LLC and now works from the Washington, D.C. office of Henner & Scarbrough LLP.  This Court expresses its great appreciation of his thorough and diligent representation of his client and thanks him for his participation in one of the highest regarded traditions of this Court.

[2] Also pending before this Court is the Defendant's Motion to Strike Correspondence (ECF No. 60).  That motion is now MOOT.  The Court did review that correspondence which had no bearing on the legal issues presented in this case.

Defendant's Motion for Summary Judgment (ECF No. 64) is GRANTED and Summary Judgment shall be entered in favor of the Defendant Brittany Distance.

## BACKGROUND

In ruling on a motion for summary judgment, this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013). In October of 2017, Plaintiff Rice was an inmate at the Eastern Correctional Institution ("ECI"). Rice is six feet tall and in October of 2017 weighed approximately 220 pounds. (Ex. 3, Rice Dep. at 34:10-21, ECF No. 64-5.) On October 22, 2017, Plaintiff Rice asked to use the handicap shower where he claims he slipped and fell, dislocating his shoulder. (*Id.* at 12:7-14, 20:12-16.) Rice was transported to the emergency room and was later moved to the Metropolitan Training Center ("MTC") to continue treatment of his injury. (*Id.* at 10:13-1:2.) The altercation which is the subject of this lawsuit occurred at MTC on October 27, 2017. At that time, Defendant Distance was a Correctional Officer employed by the Maryland Department of Public Safety and Correctional Services ("DPSCS"), who was working at MTC and assigned to the third floor of the hospital where Plaintiff Rice was housed. (Ex. 1, Distance Dep. at 19:15-18, ECF No. 64-3.) Distance is five feet and four inches tall and in October of 2017 weighed between 125 and 130 pounds. (*Id.* at 97:2-10.)

On the morning of October 27, 2017, Plaintiff alleges that he asked Correctional Officer Carlton Simmons whether he could use one of the two telephones on the third floor at MTC, and that Officer Simmons told him that he could use the phone "next." (Rice Dep. at 28:10-29:5, ECF No. 64-5.) At some point following this exchange, Defendant Distance

approached Rice's room and opened the door.  (*Id.* at 31:13-32:5.)  When the Defendant

opened the door, the Plaintiff alleges that he believed it was his turn to use the phone.  (*Id.* at

32:3-9.)  As he made his way towards the door, and by extension towards Defendant Distance,

she asked him where he was going, to which Rice responded that he was going to use the

phone.  (*Id.* at 32:33:9-15.)  Although the parties dispute whether a phone was available for

use at that time, there is no dispute that Defendant Distance told Rice that he was not

permitted to go use the phone and that he would have to wait.  (*Id.*; *see also* Distance Dep. at

48:20-22, ECF No. 64-3.)  Rice believed he had express permission from Officer Simmons to

use the phone, therefore, he continued to walk toward the door where Distance was standing

with the purpose of going to use the telephone.  (Rice Dep. at 28:13-18, 30:1-13, 31:1-4; 36-

16, ECF No. 64-5.)

   At this point, the parties' allegations with respect to the encounter again diverge.

Defendant Distance alleges that after she delivered the order for Rice to wait his turn, she

asked him to step back away from her.  (Distance Dep. at 49:6-7, ECF No. 64-3.)  She alleges

that the Plaintiff responded to her order that he would have to wait with "I don't give a fuck"

and began making grunting noises.  (*Id.* at 49:6-11.)  Rice then allegedly pushed Distance's

right shoulder, causing her to fall back and to the side of the door.  (*Id.* at 62:19-24, 63:2-16,

66:11-17.)  The Plaintiff describes the contact between the parties differently.  He does not,

however, allege as he did previously, that he did not "put his hands on" Defendant Distance.

In fact, Rice now acknowledges that there was physical contact between him and Officer

Distance.  Rice asserts that Distance placed her open hand in the middle of his chest to stop

him from exiting his room.  (Rice Dep. at 36:16-17, ECF No. 64-5.)  Rice concedes that he

made contact with Distance, using his own hand to move her hand off his chest two times before moving past her through the doorway of his room. (*Id.* at 45:6-16, 40:17-41:7.)

The parties agree that at some point during this encounter in the doorway, Distance grabbed her radio and made a "10-13" call to indicate she needed assistance. (*Id.* at 39:15-40:10, 41:11-14.) It is undisputed that following the physical contact between herself and Rice, Distance swung at Rice with the radio still in her hand, striking him once with her radio on the head. (*Id.* at 29:10-11, 39:1-17; Distance Dep. at 67:4-5, ECF No. 64-3.) Defendant Distance claims that she made this strike in self-defense. She testified that she was instructed as a part of her training that if an inmate might hurt others and is combative and resistant, she may use force to protect herself and others after expending her other resources. (Distance Dep. at 91:14-21, 112:4-11, ECF No. 64-3.) She testified that she perceived that Rice was not going to comply with her verbal order to step back and feared that he was going to harm her, or the nurses out in the hall. (*Id.* at 107:14-25, 100:22-24.) Under these circumstances and considering their difference in size, she alleges that she spontaneously swung once, hitting Rice on the head with her radio. (*Id.* at 49:8-17, 66:18-67:8, 68:2-69:3.) DPSCS conducted an immediate review of her use of force and found that the need for force existed and the amount of force used was permissible. (ECF No. 26-3 at 12.)

Plaintiff Rice testified that the Defendant's blow knocked him unconscious and caused him to suffer headaches but could not testify as to when such headaches occurred and conceded that he did not seek treatment for them. (Rice Dep. at 42:3, 80:8-15, ECF No. 64-5.) His medical records from October 27, 2017 detail ongoing issues related to his arm dislocation, but they make no mention of any complaints regarding a head injury. (*See* Medical

Records, ECF No. 8.)  Rice was discharged from MTC that same day and began his transport back to ECI.  (Rice Dep., 59:9-16, ECF No. 64-5.)

As a result of the incident on October 27, 2017, Plaintiff Rice was issued a Notice of Rules Violation and charged with multiple rules violations, including committing an assault battery on staff (Rule 101), disobeying an order (Rule 400), and demonstrating disrespect or using vulgar language (Rule 405).  (*Id.* at 68:15-69:7; *see also* Notice, Ex. 3, ECF No. 26-4 at 17.)  Less than a month later on November 7, 2017, Rice participated in a disciplinary hearing at which he pled guilty to all of the violations.  (ECF No. 26-4 at 21.)

On December 7, 2017 Rice filed a *pro se* Complaint against Defendant Distance, alleging deprivation of his rights under the Eighth Amendment, as well as due process violations. (ECF No. 1.)  Specifically, he made a claim of use of excessive force by Distance and also a claim of her violation of his due process rights.  With respect to the initial *pro se* Complaint, Distance filed a Motion to Dismiss, or in the Alternative, a Motion for Summary Judgment (ECF No. 26).  This Court granted in part and denied in part that motion (ECF Nos. 34, 35) entering summary judgment in favor of the Defendant Distance on the due process claim but denying it with respect to the Eighth Amendment excessive force claim.  Subsequently, Rice's Motion to Appoint Counsel (ECF No. 37) was granted, and *pro bono* counsel was appointed to represent him (ECF No. 39). Rice then filed a one-count Amended Complaint alleging an Eighth Amendment excessive force claim under 42 U.S.C.§ 1983. (ECF No. 49.)   Now pending is the Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment as to the Amended Complaint.  (ECF No. 64.)

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007).

## ANALYSIS

On January 4, 2021, the United States Court of Appeals for the Fourth Circuit issued its opinion in *Dean v. Jones*, in which the Court carefully reviewed the legal standard for an Eighth Amendment excessive force claim made by a prison inmate. 984 F.3d 295 (4th Cir. 2021). A claim for excessive force involves analysis of both an objective and a subjective component. *Id.* at 302. "The objective component measures the nature of the force employed, asking whether that force 'was sufficiently serious to establish a cause of action.'" *Id.* (citing *Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019)). The subjective component measures whether "the officers acted with a 'sufficiently culpable state of mind.'" *Id.* (citing *Williams v.*

*Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)).  Reviewing the undisputed facts on the record in this case, Plaintiff Rice cannot establish a claim for excessive force under the Eighth Amendment as a matter of law.

With respect to the objective component of the excessive force analysis, the Fourth Circuit for many years consistently applied the rule that a plaintiff cannot prevail on an excessive force claim if his injuries were *de minimis.  See Hill v. Crum*, 727 F.3d 312, 319 (4th Cir. 2013).  However, following the Supreme Court's decision in *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010), the Fourth Circuit now focuses its analysis on the severity of the force employed by the defendant, rather than the severity of the injury suffered by the plaintiff.  *Dean*, 984 F.3d at 303 (citing *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010)).  "This is not to say the 'absence of serious injury' is irrelevant to the Eighth Amendment inquiry."  *Wilkins*, 559 U.S. at 37 (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).  The extent of an injury suffered by the plaintiff "is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation," *id.* (citing *Whitley*, 475 U.S. at 321), and "may provide some indication of the amount of force applied," *id.*

In this case, the undisputed facts reveal that Rice did not complain of a head injury immediately after the altercation between himself and Defendant Distance, nor do his medical records indicate that he reported any injury or sought any treatment for a head injury related to being struck by Distance's radio.  (*See* Medical Records, Ex. 8, ECF No. 64-10.) Nevertheless, this Court notes that the Fourth Circuit in its recent opinion in *Dean v. Jones* established that "sufficiently serious" within the meaning of the objective component of a claim for excessive force is not a "high bar."  *See* 984 F.3d at 302.   Anything more than *de*

*minimis* or trivial force will suffice to meet the standard. *Id.* (citing *Brooks*, 924 F.3d at 112). Hitting an individual over the head with a hand-held radio likely meets this lesser standard established in the recent *Dean* opinion.

However, even if Plaintiff Rice can establish the objective component of the excessive force standard, he cannot establish the subjective component as a matter of law. As the Fourth Circuit has noted, the subjective component is the "more demanding part of the test," focusing on whether the defendant used force with "'wantonness in the infliction of pain.'" *See id.* (citing *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Whitley*, 475 U.S. at 322)). Whether an inmate can establish such a culpable state of mind turns on "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)). In other words, force is permissible when an officer is "motivated by an 'immediate risk[] to physical safety' or threat to prison order.'" *Id.* (quoting *Brooks*, 924 F.3d at 113)). An officer "cross[es] the line into an impermissible motive" when she inflicts pain "to punish or retaliate against an inmate for his prior conduct." *Id.* (citing *Brooks*, 924 F.3d at 113).

As the Fourth Circuit explained in *Dean*, the inquiry at the summary judgment stage under the subjective component of the excessive force test can be summarized as "whether a reasonable jury could determine that an officer acted with malice, applying force punitively and for the very purpose of causing harm." *Id.* (citing *Whitely*, 475 U.S. at 320-32 (internal quotations and citations omitted)). This standard derives from the U.S. Supreme Court's decision in *Whitely v. Albers*, in which the Court recognized that direct evidence of motive or intent is often hard to come by and provided four factors that can guide this Court's analysis

9

in trying to determine the subjective state of mind of Defendant Distance. These factors include: (1) "the need for application of force;" (2) "the relationship between the need and the amount of force that was used;" (3) "the extent of any reasonably perceived threat that the application of force was intended to quell;" and (4) "any efforts made to temper the severity of a forceful response." *Iko*, 535 F.3d at 239 (quoting *Whitely*, 475 U.S. at 321) (internal quotations omitted).

Applying the *Whitley* factors in this case, no reasonable jury could find that Correctional Officer Distance used force maliciously to punish or retaliate against Plaintiff Rice. With respect to the need for application of force and the reasonableness of the perceived threat, it is undisputed that Plaintiff Rice was significantly larger than Defendant Distance. As Rice testified, he is about six feet tall and at the time of the altercation weighed around 220 pounds. (Rice Dep. at 34:10-21, ECF No. 64-5.) Distance on the other hand is a five-foot, four-inch woman who weighed around 125 pounds. (Distance Dep. at 97:2-10, ECF No. 64-3.) It is also undisputed that before Distance struck Rice with her radio, Rice had been moving toward her, (Rice Dep. at 36:16-17, ECF No. 64-5; Distance Dep. at 66:22-23, ECF No. 64-3), and that he did not intend to comply with her order that he would need to wait to use the phone, (Rice Dep. at 30:19-21, ECF No. 64-5; Distance Dep. at 48:22-25, 107:14-19, ECF No. 64-3.) Additionally, although the severity of the contact remains in dispute, Rice now concedes that he did put his hands on Distance before she struck him with her radio. (Rice Dep. at 45:6-16, 40-17-41:7, ECF No. 64-5.) Less than a month later, Rice pled guilty to multiple rules violations including assault of an officer. (ECF No. 26-4 at 21.)

With respect to the remaining two factors, the relationship between the need for force and the amount of force that was used and efforts to temper the severity of the forceful response, it is undisputed that Officer Distance attempted to call for backup. Both parties testified that Distance called a "10-13," which signals a need for assistance. (Rice Dep. at 39:15-40:10, 41:11-14, ECF No. 64-5; Distance Dep. at 67:9-17, ECF No. 64-3.) While it is undisputed that Nurse Andrea White was also in the hallway outside Rice's room, there were no officers immediately available to assist Distance. (Rice Dep. at 42:16-21, ECF No. 64-5.) Both parties also agree that Distance struck Rice only once. (Rice Dep. at 41:11-42:15, ECF No. 64-5; Distance Dep. at 68:2-69:1-3, ECF No. 64-3.) Finally, as discussed above, the record lacks any evidence that Rice complained of or was treated for a head injury following the altercation. (*See* Ex. 8, ECF No. 64-10.)

Comparing these undisputed facts to the facts at issue in *Dean* is instructive. In *Dean*, the defendant officer was escorting the plaintiff inmate back to his cell after a visit to the prison barber. 984 F.3d at 299. The plaintiff conceded that during that walk, he head-butted the officer but was then "promptly subdued" by a second officer. *Id.* The plaintiff alleged that he was lying on his back and non-resistant with his arms handcuffed beneath him and the second officer kneeling on his chest when the defendant officer "administered one long burst [of pepper spray] to [the plaintiff's] face, lasting over 3 seconds" and "'partially blind[ing] him.'" *Id.* (internal quotations and citations omitted). The defendant officer argued that any reasonable jury would have found that he used force "only to protect officer safety in the wake of the plaintiff's head-butt, not 'maliciously' to punish [the plaintiff]." *Id.* at 303. The Fourth Circuit disagreed, holding that "when officers do use force . . . against a formerly recalcitrant

inmate after he has been subdued, then a reasonable jury may infer that the force was applied

not for protective reasons but instead to retaliate or punish." *Id.* at 304 (citing *Iko*, 535 F.3d

at 239-40).  In other cases cited by the Fourth Circuit in *Dean*, the facts are similar: the plaintiffs

were handcuffed and restrained, no longer posing a threat to officer safety and prison order.

*See Iko*, 535 F.3d at 239-40 (holding that use of pepper spray against inmate who was lying on

the floor and restrained might give rise to an inference that the force was not being deployed

protectively); *see also Brooks*, 924 F.3d at 116 (holding that delivering taser shocks to inmate

who was handcuffed and surrounded by officers might allow a jury to infer improper motive).

The undisputed facts in this case vary sharply from the facts of *Dean*, *Iko*, and *Brooks*.

When Defendant Distance made her single strike on Rice, he had not been restrained in any

way.  Rice moved towards her, used physical force against her, and demonstrated that he was

not going to comply with her direct orders.  Despite her call for help, Distance had no backup

or assistance and was at a significant size disadvantage to the approaching inmate.  Any threat

she perceived was on-going at the time she chose to use force against him.  Plaintiff Rice later

pled guilty to an assault on Officer Distance.  No reasonable jury could conclude from these

facts that Distance was acting with "wantonness in the infliction of pain" and "for the very

purpose of causing harm." *Dean*, 984 F.3d at 302 (internal quotations and citations omitted).

Plaintiff Rice cannot establish the subjective component of the excessive force test as a matter

of law, and Defendant Distance is entitled to summary judgment in her favor.

Additionally, this Court notes that even if Rice could establish both prongs of the

excessive force test, Distance would still be entitled to summary judgment on the basis of

qualified immunity.  "Under the doctrine of qualified immunity, 'a corrections officer who 'has

violated a prisoner's constitutional right' is 'shielded from liability . . . if an objectively reasonable officer could have believed that his actions were lawful in light of clearly established law.'" *Dean*, 984 F.3d at 309-10 (quoting *Brooks*, 924 F.3d at 118 (internal citation omitted)). In conducting an inquiry into whether a right is clearly established, this Court must "define the right 'in light of the specific context of the case, not a broad general proposition.'" *Cox v. Quinn*, 828 F.3d 227, 238 (4th Cir. 2016) (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 301 (4th Cir. 2004) (internal citation omitted)). While it is clearly established that inmates have a right to be free from pain inflicted maliciously, it cannot be said it is an apparent violation of that right when an officer without backup strikes an inmate a single time after that inmate made clear he would disobey her order, was approaching her, and made physical contact with her—especially in light of a significant size disparity between herself and the inmate. Once a defendant raises the defense of qualified immunity, the burden is on the plaintiff to show that "in the light of pre-existing law that the unlawfulness" of the defendant's conduct was "apparent." *Bryant v. Muth*, 994 F.2d 1082, 1086 (4th Cir. 1993) (citing *Dixon v. Richer*, 922 F.2d 1456, 1460 (10th Cir. 1991); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Plaintiff Rice cannot show that the unlawfulness of Distance's single blow was "apparent" on the undisputed facts of this case.

## CONCLUSION

For the reasons stated above, Defendant Distance's Motion for Summary Judgment (ECF No. 64) is GRANTED and Summary Judgment is entered in favor of the Defendant Brittany Distance.

A separate Order follows.

Dated: March 3, 2021.

_____/s/_____
Richard D. Bennett
United States District Judge